# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

**LESLIE REBSTOCK**                                                                       **PLAINTIFF**

**V.**                              **No. 3:20-CV-180-ERE**

**ANDREW SAUL, Commissioner,**
**Social Security Administration**                                                **DEFENDANT**

## <u>ORDER</u>

**I. INTRODUCTION**

On June 13, 2017, Leslie Rebstock applied for disability benefits, alleging disability beginning June 12, 2017. (Tr. at 13). Her claims were denied both initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge (ALJ) denied Ms. Rebstock's application. (Tr. at 34). Ms. Rebstock requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1). Therefore, the ALJ's decision stands as the final decision of the Commissioner. Ms. Rebstock filed this case seeking judicial review of the decision denying her benefits.[1]

**II. THE COMMISSIONER'S DECISION**

The ALJ found Ms. Rebstock had not engaged in substantial gainful activity since the alleged onset date of June 12, 2017. (Tr. at 15). The ALJ determined Ms. Rebstock had the following severe impairments: Crohn's disease with gastroparesis; a history of mediastinal adenopathy; and unspecified depressive disorder with anxious distress. *Id*.

After finding Ms. Rebstock's impairments did not meet or equal a listed impairment (Tr. at 16), the ALJ determined that she had the residual functional capacity ("RFC") to

---

[1] The parties consented to proceed before a magistrate judge. (ECF No. 4).

perform work at the sedentary exertional level, except that: (1) she could occasionally reach overhead; (2) she would need to avoid hazards, such as unprotected heights and dangerous moving mechanical parts; (3) she would need to avoid concentrated exposure to extreme heat, cold, and humidity; (4) she would need to avoid concentrated exposure to pulmonary irritants; and (5) she could perform simple, routine, and repetitive tasks as well as make simple work-related decisions. (Tr. at 17). The ALJ also found Ms. Rebstock could concentrate, persist, and maintain pace with normal breaks and would require incidental interpersonal contact with simple, direct, and concrete supervision. *Id*.

The ALJ found Ms. Rebstock was unable to perform any of her past relevant work as a welder, fast food manager, and telephone sales representative. (Tr. at 32). Relying upon the testimony of a Vocational Expert ("VE"), the ALJ found that, based on Ms. Rebstock's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including positions as a document preparer and surveillance system monitor. (Tr. at 32-33). Thus, the ALJ determined that Ms. Rebstock was not disabled. (Tr. at 33).

### III. DISCUSSION

#### A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision."

*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

### B. Ms. Rebstock's Arguments on Appeal

Ms. Rebstock contends that substantial evidence does not support the ALJ's decision to deny benefits and the decision is based on legal error. She argues that: (1) the ALJ's RFC assessment failed to capture the concrete consequences of either severe Crohn's disease or severe gastroparesis; (2) the ALJ erred in rejecting Ms. Rebstock's treating physician opinion; (3) the ALJ failed to develop the medical record; and (4) the ALJ relied on legally deficient vocational evidence at step five.

In conducting the analysis, the ALJ noted Ms. Rebstock was diagnosed with gastroparesis in August 2016. (Tr. at 20-21). A colonoscopy in November 2016 showed ileal ulcers and a normal colon, resulting in a diagnosis of Crohn's disease. (Tr. at 783). Biopsies of the ileum were consistent with either NSAID enteritis or Crohn's disease: "By histology alone, potential etiology of this active inflammatory process within the ileal mucosa includes NSAIDs. Crohn's disease is also a consideration; however, there are no granulomas, crypt architectural distortion, pyloric gland metaplasia, or other more specific histologic features suggestive of Crohn's disease (over NSAIDs) in this biopsy. If an NSAID etiology has been reasonably excluded, consider empiric treatment for Crohn's

3

disease." (Tr. at 649). Ms. Rebstock denied using NSAIDs. No active or chronic colitis was identified. (*Id.*) After a course of prednisone, she reported her symptoms were "much better." (Tr. at 668).

The ALJ noted that in February 2017, an abdominal CT was normal, showing "no acute intra-abdominal or pelvic process." (Tr. at 525). During several visits with Dr. Samuel Burchfield, her primary care physician, Ms. Rebstock reported that her pain medications controlled her pain and allowed her to accomplish her activities of daily living. (Tr. at 724, 726, 730, 732, 736). In June 2017, another abdominal CT showed "mild wall thickening and mucosal hyperenhancement" compatible with colitis. (Tr. at 718).

In August 2017, Ms. Rebstock was referred to Dr. Sara Horst, a gastroenterologist at the inflammatory bowel disease clinic at Vanderbilt University Medical Center, for further evaluation of her "abdominal pain in the face of diagnosed mild Crohn's disease and gastroparesis." (Tr. at 782). On August 2, Dr. Horst noted that the February 2017 CT of Ms. Rebstock's abdomen was normal and she suspected Ms. Rebstock had "functional abdominal pain worsened by narcotics." (Tr. at 784). Ms. Rebstock stated that Humira helped, but she still had abdominal pain, bloating, and an alternating pattern of diarrhea for up to six times per day to no bowel movements in a day. (Tr. at 782). Dr. Horst recommended Ms. Rebstock quit taking narcotics because narcotics worsen gastroparesis and recommended she quit smoking cigarettes because tobacco use worsens Crohn's and has been shown to decrease the efficiency of medications for inflammatory bowel disease. *Id*. On August 18, Dr. Horst performed a colonoscopy and upper GI endoscopy. The colonoscopy showed the entire examined colon and ileum were normal, and the endoscopy

4

showed the esophagus, stomach, and examined duodenum were normal. (Tr. at 777, 779). All biopsies were negative for active inflammation, granulomas, and dysplasia, but they showed chronic colitis without activity in the colon and rectum. (Tr. at 819). A few days later, Ms. Rebstock reported "great improvement with gastroparesis diet and decrease of cigarettes to 1 per day." (Tr. at 777). At her December 2017 follow-up with Dr. Horst, Ms. Rebstock stated she was doing much better with the gastroparesis diet and getting off narcotics, though she was still smoking. (Tr. at 818).

At a visit with Dr. Burchfield on May 7, 2018, she reported issues with her stomach swelling, bumps popping out all over, and her kidneys hurt. (Tr. at 843). An acute abdominal series showed a mild gaseous distended stomach and bowel with no gross obstruction or free air. (Tr. at 864).

In October 2018, Ms. Rebstock was in the emergency room at NEA Baptist Memorial Hospital with complaints of back pain and headache. (Tr. at 916). Dr. Wallace Lock opined the pain was musculoskeletal and discussed following up with her primary care physician and taking over-the-counter topical pain medications. (Tr. at 919). The next day, during a follow-up with Dr. Burchfield, she showed limited range of motion in her neck but normal range of motion in her shoulder joints, normal sensations bilaterally, and normal motor strength. (Tr. at 964). She followed up in November 2018 for refills of her Percocet and Xanax prescriptions. (Tr. at 962). She stated that her pain was controlled with medications and she was able to perform activities of daily living. *Id*.

The ALJ also considered Ms. Rebstock's mental impairments. Record evidence included the March 2018 consultative psychological examination of Dawn Wells, Ph.D., a

licensed psychologist. At the time of the examination, Ms. Rebstock stated she was "still employed" at her sales job on an hourly basis. (Tr. at 833). Dr. Wells noted she could groom and dress independently, drive unfamiliar routes, cook, clean, wash clothes, count change and buy groceries, and was still working part time. (Tr. at 839). She demonstrated no difficulty with communication, and there was no evidence of inability to cope with typical mental/cognitive demands of basic work-like tasks. *Id*. Dr. Wells also found Ms. Rebstock appeared to have adequate attention and concentration, exhibited adequate persistence, and appeared capable of completing work-like tasks within an acceptable timeframe. (Tr. at 839-40). The ALJ found the record otherwise contained "little treatment for mental health issues other than oral medications." (Tr. at 31).

1. <u>RFC and Medical Opinion Evidence</u>

Ms. Rebstock argues the RFC failed to capture the consequences of her Crohn's disease and gastroparesis because it did not account for her need to take frequent and longer than normal breaks or miss more than three days of work per month. In support, she points to Dr. Burchfield's May 8, 2018 medical source statement, in which he opined Ms. Rebstock would need frequent long breaks and absences due to "severe Crohn's disease which causes fecal incontinence, pain and unpredictable exacerbations." (Tr. at 912). He also opined she could lift less than ten pounds, would not be able to reach in all directions, and could sit, stand and walk for less than two hours per day. He indicated her severe Crohn's disease and treatment would cause her to be absent from work more than three days per month. (Tr. at 914). The ALJ rejected Dr. Burchfield's opinion as unpersuasive, finding that it was not well supported by Dr. Burchfield's longitudinal record of treatment

6

or by medically acceptable and laboratory diagnostic techniques, and that it was inconsistent with other substantial evidence of record. The Court agrees with the ALJ's assessment.

If a treating physician's opinion is internally inconsistent or conflicts with substantial evidence contained within the claimant's medical record as a whole, an ALJ may properly afford it less weight. *Pemberton v. Saul*, 953 F.3d 514, 517 (8th Cir. 2020). Here, there was substantial evidence in the record indicating Ms. Rebstock's limitations were not as severe as Dr. Burchfield described in his medical source statement. Dr. Burchfield's own treatment notes consistently demonstrate Ms. Rebstock's pain medications controlled her pain and allowed her to accomplish her activities of daily living, (Tr. at 724, 726, 730, 732, 734, 736, 771, 962, 969), and his between-visit goals for her Crohn's disease included adding exercise. (Tr. at 845). See *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (finding a physician's encouragement of physical exercise suggests increased functional capacity). Meanwhile, Ms. Rebstock's treating gastroenterologist noted her Crohn's disease was mild, rather than severe, and the August 2017 colonoscopy Dr. Horst performed showed her colon and terminal ileum were endoscopically normal. (Tr. at 777). Dr Horst also noted on follow-up that Ms. Rebstock reported "great improvement" following a gastroparesis diet, decreasing her cigarette use, and "getting off narcotics." (Tr. at 777, 818). Ms. Rebstock continued to do work as a telephone sales representative in a reduced capacity through 2018, indicating her daily activities were, at least at times, greater than she generally reported. (Tr. at 28, 214-15). The ALJ did not err in rejecting Dr. Burchfield's medical source statement, and the ALJ had evidence sufficient

7

to make a decision on disability in its absence, including medical records from various treatment providers and opinions from non-examining physicians. *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011).

Ms. Rebstock also argues the ALJ erred by failing to consider medical records she submitted after the hearing, which are included in the administrative record. The Court disagrees. Although the ALJ is required to develop the record fully and fairly, she is not required to discuss every piece of evidence submitted, and her failure to cite specific evidence does not indicate that it was not considered. *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000). The ALJ said she considered all the evidence, and the Court will presume she did so. The Court finds the ALJ fully developed the record and substantial evidence supports the ALJ's RFC.

2. Step Five

With respect to step five of the ALJ's analysis, Ms. Rebstock presses three arguments. The first is that the ALJ did not rely on treating or examining medical opinions when forming the vocational hypothetical at the hearing. The Court has already addressed this issue and found that substantial evidence supports the RFC, which was accurately described in the ALJ's hypothetical to the VE.

Next, Ms. Rebstock argues that the ALJ's hypothetical did not account for her limitations in the ability to concentrate, persist, or maintain pace, which were found to be "moderate" in earlier steps of the analysis. But there is nothing inconsistent about the separate analyses at each step in this case, and moderate difficulties in these areas are consistent with the limitations in the ALJ's hypothetical, which limited Ms. Rebstock to

8

simple, routine, and repetitive tasks; simple work-related decisions; simple, direct, and concrete supervision; and incidental interpersonal contact. *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018).

Ms. Rebstock's third argument presses that the ALJ failed to resolve a conflict between VE testimony and the *Dictionary of Occupational Titles* (DOT) regarding overhead reaching. Ms. Rebstock's RFC limited her to only occasional overhead reaching, but the job of document preparer (DOT 249.587-018) requires frequent reaching. Before relying on VE evidence to support the determination that Ms. Rebstock is disabled, the ALJ had an affirmative responsibility to ask about any possible conflict and obtain an explanation for it. *Renfrow v. Colvin*, 496 F.3d 918, 920-21 (8th Cir. 2007). In this case, the VE identified the possible conflict and testified that her opinion was based on how the job was described in the DOT as being performed, and then she used her knowledge, education, training, and experience to equate it with each of the hypotheticals presented by the ALJ. Courts in this Circuit have held a VE's reliance on judgment and experience with the job in question is sufficient to resolve any apparent conflict. *Jones-Brinkley v. Comm'r*, No. 3:20-cv-58, 2021 WL 371689, at *3 (E.D. Ark. Feb. 3, 2021) (collecting cases). Moreover, the VE also recommended other work as a surveillance system monitor (DOT 379.367-010), which does not require reaching. See *Grable v. Colvin*, 770 F.3d 1196, 1202 (8th Cir. 2014) (finding "one mistaken recommendation" will not devalue the rest of a VE's opinion "as long as some of the identified jobs satisfy the claimant's [RFC]"). The ALJ did not err in relying on the VE's testimony to support the determination of "not disabled."

## IV. CONCLUSION

For the reasons stated above, the Court concludes that the ALJ's decision is supported by substantial evidence on the record as a whole. The RFC incorporated all of Ms. Rebstock's credible limitations, the ALJ did not err in rejecting the treating physician opinion, the record was fully and fairly developed, and the ALJ did not err at step five. The finding that Ms. Rebstock was not disabled within the meaning of the Social Security Act is hereby AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 24th day of June, 2021.

_____
UNITED STATES MAGISTRATE JUDGE